Wise, J., dissenting.
 

 {¶ 23} I respectfully dissent from the majority's decision to affirm the trial court's denial of appellant's appeal of the Administrative License Suspension (ALS).
 

 {¶ 24} Appellant herein has contended that the trial court erred in finding appellant had refused OVI chemical testing conducted by the trooper. It is undisputed that Trooper White decided not to offer appellant a second opportunity to submit to a breath test after the first attempt came back as "invalid sample."
 
 See
 
 Tr. at 19. He testified at the hearing that after appellant had commenced blowing into the machine for the first and only breath sample attempt, appellant continued blowing continuously as directed and "there was an audible tone from the instrument." Tr. at 39. When pressed as to why the sample came back as invalid, the trooper responded: "Um, for whatever reason, the machine, he either stopped blowing or there was some type of, he blew too hard. I, I can't explain why there was an invalid sample." Tr. at 40. He had also told appellant during the incident that two invalid samples would be an "automatic refusal." Tr. at 18.
 

 {¶ 25} Appellant himself later testified that he thought he had followed the trooper's instructions, and that he would have attempted again to submit a breath sample if he had been offered a second chance.
 
 See
 
 Tr. at 47, 48.
 

 {¶ 26} As indicated in the majority's recitation of the facts, Trooper White further testified that according to his training, the Datamaster had to be taken out of service if a second consecutive invalid breath sample occurred.
 
 See
 
 Tr. at 18-19. I recognize that when a chemical test is challenged based upon a failure to comply with an Ohio Department of Health regulation, the State need only demonstrate substantial compliance, rather than strict compliance, with that regulation.
 
 See
 

 State v. Curtis
 
 , 10th Dist. Franklin No. 09AP-1199,
 
 2011-Ohio-3298
 
 ,
 
 2011 WL 2586555
 
 , ¶ 35, citing
 
 State v. Burtch,
 
 10th Dist. Franklin No. 09AP-635,
 
 2010-Ohio-259
 
 ,
 
 2010 WL 323222
 
 , ¶ 17 (additional citations omitted). However, in the present case the trooper stated that he did not know what Ohio Administrative Code section addressed removal of a BAC Datamaster after two invalid samples from an individual. Tr. at 18. But while a Datamaster must be taken out of service for inspection upon two controlled instrument checks outside the .005 range for the calibration solution target (
 
 see
 
 OAC 3701-53-04 (A)(2) ), the State in its response brief provides no citation to an administrative provision supporting the trooper's assertions regarding removal of the machine from service.
 

 {¶ 27} Next, in regard to the subsequent urine test attempt, it is undisputed that the trooper allowed just two minutes for appellant to provide a sample before marking him as "refused," even though appellant claimed he was able to produce "a couple of drops" of urine.
 
 See
 
 Tr. at 49. We note that during the ALS appeal hearing, the following exchange took place between appellant's counsel and Trooper White:
 

 {¶ 28} "Q: Now, just so we're clear, Trooper, you're saying that Mr. Mattes said, 'I'm not going,' words to the effect that I'm not going to pee in that cup or no, I'm not going to take that test, or something to that effect?"
 

 {¶ 29} "A: I cannot testify to that. He just did not provide a sample."
 

 {¶ 30} Tr. at 22.
 

 {¶ 31} Appellant testified that he asked for a glass of water and a twenty-minute waiting period to try for another urine sample, but that Trooper White declined
 and stated he needed to get back on patrol. Tr. at 50, 51.
 

 {¶ 32} As the majority duly recites, "[i]t is not a refusal if a person is unable to perform the requested act."
 
 State v. Brown
 
 ,
 
 supra
 
 (additional citations and internal quotations omitted). I am therefore troubled by Trooper White's stark assertion at the hearing that "not providing a sample is a refusal." Tr. at 36.
 

 {¶ 33} The majority also recites the decision of the Ohio Supreme Court in
 
 City of Kettering v. Baker
 
 ,
 
 supra
 
 , for the holding that R.C. 4511.191(A) does not impose an obligation mandating chemical testing conducted by municipalities. However, I note in that case, which did not stem from an appeal of an ALS suspension, Kettering authorities apparently had previously made a policy decision not to perform breathalyzer or blood tests at all, and the defendant therein did not request any chemical testing when transported to the jail.
 
 See
 

 id.
 
 at 352,
 
 328 N.E.2d 805
 
 .
 

 {¶ 34} In the case
 
 sub judice
 
 , appellant indeed requested testing, and given Trooper White's questionable curtailment of the breath test after one try and the restricted time frame immediately thereafter provided for the urine test, I do not find the trial court's conclusion that a valid testing refusal had occurred and the court's corresponding denial of appellant's ALS appeal were supported by competent, credible evidence. While I recognize the potential for stalling tactics by a driver submitting to OVI chemical testing, fundamental fairness demands that before driving privileges can be suspended on the basis of a motorist's "refusal" to allow such testing, a law enforcement officer must do more than what the trooper accomplished in this instance once the testing process has been initiated.
 

 {¶ 35} I would therefore sustain appellant's sole Assignment of Error and reverse the municipal court's affirmance of the ALS suspension.